Maio, Exrx., *v.* Fahs et al., Appellants.

Argued April 10, 1940.   Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*J. B. Colahan* and *E. L. Menges,* of *Ditter & Menges,* with them *James H. Egan,* and *George H. Detweiler,* for appellants.

*Charles N. Moffett,* with him *John V. Diggins,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 24, 1940:

On August 4, 1937, plaintiff's deceased husband, Clarence B. Sell, sustained injuries resulting in his death while employed as a helper on a milk truck operated by the additional defendant, Turner & Westcott, Inc. This truck collided with a tractor and trailer truck operated by the defendant Fahs at the intersection of Bryn Mawr Avenue and Old Gulph Road, in Lower Merion Township, Montgomery County. The present suit was brought by Sell's widow against Fahs to recover damages for his wrongful death. Fahs brought upon the record as additional defendants Sell's employer, Turner & Westcott, and Chatburn, the driver of the milk truck. The jury returned a verdict against all the defendants jointly. Fahs filed motions for a new trial and for judgment n. o. v., and Turner & Westcott filed a motion for judgment n. o. v. These motions were all denied. Since the commencement of suit, Sell's widow died and her executrix has been substituted as plaintiff.

The evidence showed that Chatburn drove the Turner & Westcott milk truck, a "stand-up" type, south on Old Gulph Road into the intersection where it crashed into the left side of the Fahs truck approaching in a northeasterly direction from the right on Bryn Mawr Ave. Sell stood at Chatburn's right. Both highways are 25 feet wide. The intersection is not at right angles. Both highways slope towards the intersection in the directions from which the vehicles were approaching. Chatburn testified for the plaintiff that as he approached Bryn Mawr Avenue he slowed down and brought his vehicle to a stop at the stop-sign for traffic on that high-

way located 10 or 15 feet north of the intersection, that
he looked both ways and saw no vehicle approaching.
However, he said that his vision to the right was ob-
structed by a high bank topped by underbrush, so that he
had a view of only ten feet up Bryn Mawr Avenue in the
direction from which the Fahs truck was approaching.
He then put his vehicle in motion again, in second gear,
and when he got out to the curb line of the intersection
he saw the Fahs truck in the middle of the highway
and bearing down on him at a speed of 40 miles an hour.
He applied his brakes and swerved to the right, but a
moment later the collision occurred, the right front of
his truck striking the left side of the Fahs truck near
its front wheel.

Chatburn fixed the point of impact as northwest of
the mid-point of the intersection, i. e., on the right-hand
side of Old Gulph Road with respect to the direction
of his truck but on the left side of Bryn Mawr Avenue
with respect to the movement of the Fahs truck. After
the collision the Turner & Westcott truck was dragged
for a short distance and came to rest on the southeast
corner, up against the curb, while the other vehicle
jumped the curb and ran over a lawn along the south-
east curb of Bryn Mawr Avenue a distance of some 40
or 50 feet, coming to a halt against a telephone pole,
which was snapped off, with the forward or tractor por-
tion over the curb again and projecting into the cart-
way of Bryn Mawr Ave. Sell was catapulted from the
milk truck by the force of the impact. After the acci-
dent he was found lying in the cartway with his shoulder
beneath a rear wheel of the milk truck. He was taken
to a hospital, where he died several hours later.

It was admitted that the Fahs truck was a ten-wheeled
vehicle of the heaviest type, loaded with more than nine
tons of pottery in transit from York, Pa., to Long Island.
Its driver testified that he did not see the milk truck
until he was 20 feet from the intersection, although
there was nothing to indicate that he could not have

seen it if he had slowed down and looked to his left up Old Gulph Road, which made an obtuse angle with the thoroughfare on which his truck was traveling. On first observing the milk truck, when the latter was about 15 feet north of the intersection, he applied his brakes and swerved to his right, with the result that he drove up over the curb. He stated that his vehicle could not have been stopped by its brakes within the twenty-foot distance to the curb line. He had no idea what space would be required to bring his truck to a standstill at that time and place.

A disinterested witness who at the time was driving his automobile north on Old Gulph Road, 150 feet south of the intersection, stated that the Fahs truck crossed in front of him at the moment of the collision at a speed of 30 to 35 miles an hour. This witness and two others all testified that Chatburn, on the way to the hospital, admitted not having halted at the stop-sign on Old Gulph Road. There was further testimony by two police officers who were present at the scene of the accident shortly after it occurred that the rear wheels of the milk truck left skid marks on the asphalt pavement from the stop sign on Old Gulph Road all the way to where it came to rest, a distance of over fifty feet.

The jury was justified in finding that both drivers were at fault and bringing in a verdict in accordance with that finding. None of the parties contend that Chatburn, the driver of the Turner & Westcott truck, was not negligent. The contention of the appellant Fahs that no proof of his driver's negligence was presented must be rejected. Fahs is confronted with proof that his vehicle was operated at a speed of 30 to 40 miles an hour downgrade in the middle of a 25-foot roadway; across an intersection which was practically "blind," so far as the view to its driver's left was concerned; and without any effort on the driver's part to slow down and observe the vehicle approaching from the left on Old Gulph Road, which he in fact did not see until his own

truck was 20 feet from the intersection. Then, as he admits, it was impossible to stop his heavily laden truck in time to avoid a collision. The vehicle was of the 3-axle, V-class commercial tractor-and-trailer type with pneumatic tires, which under the provisions of the Motor Vehicle Code then in force could not be lawfully driven at a speed in excess of 24 miles an hour: Motor Vehicle Code of May 1, 1929, P. L. 905, sec. 1002, as amended by the Act of June 5, 1937, P. L. 1718, (75 PS sec. 501). The jury properly found that the driver of the Fahs truck was operating it at an unlawful rate of speed. As we said in *Wilson et al. v. Consolidated Dressed Beef Co.*, 295 Pa. 168, 173, 145 A. 81, "it was his duty, on approaching this intersection with his heavily-laden truck, to have it under perfect control so that he could stop at the shortest possible notice." The fact that he was on a "through highway" did not confer upon him the absolute right-of-way as opposed to the Turner & Westcott truck; if the Fahs operator was exceeding his lawful rate of speed, he forfeited his right-of-way: Motor Vehicle Code, sec. 1013, as amended (75 PS sec. 572). "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left must yield the right-of-way to the vehicle on the right, *unless this right-of-way is forfeited by traveling at an unlawful speed* [italics supplied] . . . *Gray v. Ohio Grease Co.*, 283 Pa. 461 [129 A. 456]; *Alperdt v. Paige*, 292 Pa. 1 [140 A. 555]. It was for the jury to determine whether appellee was entitled to the benefit of this rule": *Hostetler v. Kniseley*, 322 Pa. 248, 251, 185 A. 300. Section 1014 of the Motor Vehicle Code (75 PS sec. 573) gives the right-of-way to the vehicle proceeding on a "through highway," but provides that this "shall not operate to relieve the driver of any vehicle being operated on a through highway from the duty to drive with due regard for the safety of vehicles entering such through highway, nor shall it protect the driver of any vehicle on a through high-

way from the consequence of an arbitrary exercise of such right-of-way." The right-of-way right of a vehicle on the "through highway" is a qualified one, and if the driver fails to observe the ordinary precautions in regard to speed and control of his vehicle and keeping a look-out for cars approaching an intersection, he may be held to be negligent: *Mathiasen v. Brennan,* 318 Pa. 577, 179 A. 438; *Stegner et al. v. Florini,* 103 F. (2d) 980. The question of negligence in the case of such a violation of the Motor Vehicle Code is for the jury: *Rhinehart v. Jordan et al.,* 313 Pa. 197, 169 A. 151. It likewise appears from the evidence that the Fahs truck was operated in the center of the highway as it approached and crossed the intersection, thus violating two additional provisions of the Motor Vehicle Code, secs. 1004, 1005 (75 PS secs. 521, 522). All this evidence warranted the jury's holding Fahs jointly responsible for the injury which resulted.

Appellant's argument that a recovery by plaintiff was barred because Sell was a fellow servant of Chatburn, the driver of the Turner & Westcott truck, is unsound. Chatburn testified that Sell had no control over the operation of the truck. When asked whether Sell said anything to him, as (according to his version of the facts) he halted his truck at the stop sign, he replied that he could not recall whether anything had been said or not. The accident happened a moment later and it is clear that Sell could have done nothing to prevent it. "It is only when the driver is the servant or agent of the passenger at the time of the negligent act and that act is committed within the scope of the servant's or agent's employment, or when the driver and the passenger are business partners and the operation of the vehicle is in furtherance of the partnership business, that the negligence of the driver will from the mere relationship of the parties be imputable to the passenger": *Rodgers et ux. v. Saxton,* 305 Pa. 479, 488, 158 A. 166; *Watkins et ux. v. Overland Freight Co., Inc.,*

325 Pa. 312, 188 A. 848; *Mork et ux. v. Caslov et al.,*
327 Pa. 298, 192 A. 903. It was not disputed here that
both Sell and Chatburn were employees of Turner &
Westcott, engaged on its business, but no negligence is
to be imputed from the fact that they were fellow serv-
ants: *McDougall v. Schaab et al.,* 117 Pa. Superior Ct.
285, 178 A. 168; *Marmar v. Farrell,* 116 Pa. Superior
Ct. 586, 177 A. 224.

What has already been said disposes of the other as-
signments of error of this appellant, except those based
on alleged errors in the manner of the case's submission
to the jury. We find no substantial error in the court's
charge. At the conclusion of the charge the trial judge
afforded counsel an opportunity to call his attention
to any errors but no complaint was made and no ex-
ception taken. In view of this the assignments of error
are overruled: *Marcus v. White Star Lines, Inc.,* 316
Pa. 380, 175 A. 490; *The Tropical Paint & Oil Co. v.
Sharon Bldg. Co.,* 313 Pa. 51, 169 A. 105; *Williams,
Receiver, v. Lumbermen's Ins. Co.,* 332 Pa. 1, 1 A. 2d. 658.

Appellant Turner & Westcott challenges the judgment
against it, asserting that plaintiff's exclusive remedy
against it for the wrongful death of her husband, its
employee, is under the Workmen's Compensation Act of
June 2, 1915, P. L. 736. It is clear that no original
action against Turner & Westcott could have been main-
tained: *Swartz v. Conradis,* 298 Pa. 343, 148 A. 529;
*Staggers v. Dunn-Mar Oil & Gas Co.,* 312 Pa. 269, 167
A. 785. In the present case appellant was brought upon
the record as additional defendant by the original de-
fendant, Fahs, on a scire facias issued under the Act
of April 10, 1929, P. L. 479, as amended (12 PS sec. 141),
alleging that Turner & Westcott was "severally with him,
or alone, liable to the plaintiff for the cause of action
declared on in the said suit." It was stipulated at the
trial that after the accident Turner & Westcott entered
into a compensation agreement with the plaintiff pur-
suant to the act, under which appellant has paid and is

still paying compensation for the death of Sell, its employee. Appellant's motion for judgment n. o. v. on the ground stated above was at first allowed by the court below but on re-argument was overruled. It held that though plaintiff could not issue execution or other process to collect her judgment from Turner & Westcott, that equitable considerations required the entry of judgment against all the defendants in order that Fahs' right to contribution from his joint tort-feasor, Turner & Westcott, as determined by the jury's verdict, should not be lost or nullified: *Goldman et al. v. Mitchell-Fletcher Co.*, 292 Pa. 354, 141 A. 231; *Parker v. Rodgers et al.*, 125 Pa. Superior Ct. 48, 189 A. 693; Cf. Act of June 24, 1939, P. L. 1075.

In *Jackson v. Gleason et al.*, 320 Pa. 545, 182 A. 498, the scire facias joining the additional defendant, which was also the employer, alleged that it was "alone liable" for the cause of action declared on. In view of the master and servant relationship, we held that plaintiff's *only* claim against the additional defendant was under the Workmen's Compensation Act, hence the cause of action declared on did not and could not exist against the additional defendant and the writ of scire facias was without foundation. A verdict in that case *against the employer alone* could not have been permitted to stand. However, we sustained a verdict and judgment against the original defendant, because the case had been submitted to the jury with express instructions that it might return a verdict against the original defendant only if the accident was due to the sole and exclusive negligence of that defendant. The jury so found, and consequently the question of the right of contribution against the additional defendant was eliminated. In the case now before us a verdict fixing joint liability was returned, thus equally fixing Fahs' right of contribution from his joint tort-feasors, Turner & Westcott, and the driver Chatburn. The entry of judgment n. o. v. in favor of Turner & Westcott would destroy Fahs' right

of contribution against that corporation in spite of the fact that the jury found that all three defendants were jointly and severally liable for Sell's death. The Act of June 24, 1939, P. L. 1075, provides that "contribution shall be enforcible among those who are jointly or severally liable for a tort where, as between them, such liabilities are either all primary or all secondary." See *Goldman et al. v. Mitchell-Fletcher Co.,* supra. In *Parker v. Rodgers et al.,* supra, the Superior Court held that where contribution is allowed among joint tort-feasors after judgment recovered against them, the allowance is based not on the tort but arises by reason of an implied engagement of each to contribute on an equitable basis a sum sufficient to satisfy the judgment and to bear the common burden as reason and natural justice dictate. In *Gossard v. Gossard,* 319 Pa. 129, 178 A. 837, this court said of the Sci. Fa. Act of May 18, 1933, P. L. 807: "The act works out contributions as between joint tort-feasors. It should be construed so as to advance the legislative purpose." This act expressly provides, inter alia: "Upon the joinder of additional defendants under the terms of this act, such suit shall continue, both before and after judgment, according to equitable principles, although at common law, or under existing statutes, the plaintiff could not properly have joined all such parties as defendants."

In *Majewski et al. v. Lempka et al.,* 321 Pa. 369, 374, 183 A. 777, we said of the Sci. Fa. Act of April 10, 1929, P. L. 479, as it has been amended by the Acts of June 22, 1931, P. L. 663, and May 18, 1933, P. L. 807: "The legislation is remedial and is intended to avoid multiplicity of suits. The original defendant is given the opportunity of bringing in other interested parties to the end that their liability, if any, may be determined at the same time the original defendant's liability is adjudicated. The fact that these defendants were all held liable in one action was due to the very nature of the trial provided for in the act referred to."

In the instant case plaintiff in her statement of claim pleaded that the defendant Fahs was responsible through his negligence for her husband's death. Then Fahs brought by a writ of scire facias, George Chatburn and Turner & Westcott, Inc., upon the record as additional defendants. That did not affect plaintiff's suit against Fahs, the original defendant. See *Koontz v. Messer et al.*, 320 Pa. 487, 494, 181 A. 792. By rendering a verdict in favor of the plaintiff the jury declared in effect that all three defendants were liable to the plaintiff in the damages awarded (subsequently reduced by the court to $20,000). If plaintiff attempts to collect this judgment from Turner & Westcott, Inc., she is barred by the provisions of the Workmen's Compensation Act. The widow's only right to recover against her husband's employer, Turner & Westcott, Inc., is the right given her under that act, for on August 23, 1937, Turner & Westcott (quoting from the stipulation) "entered into an agreement for compensation for death in accordance with the Workmen's Compensation Act of Pennsylvania," which agreement "is still in force and being complied with by the parties."

Since compensation is being paid under that agreement it would be manifestly inequitable to permit plaintiff to recover *the entire amount* of her judgment against the other two defendants or against either of them. Therefore, in the event that she proceeds to enforce the judgment against either or both of the other two defendants, she must not be permitted to collect more than the amount of the judgment with interest, *less the amount paid her under the compensation agreement.* If the judgment thus reduced is paid by either of the other defendants (or by both of them jointly), the defendant so paying the judgment shall be entitled to be subrogated to plaintiff's rights under the Workmen's Compensation Agreement.

In *Vinnacombe et ux. v. Phila. and Amer. Stores Co. et al.*, 297 Pa. 564, 573, 147 A. 826, this court said, in discussing the sci. fa. act: "If, at the trial, the jury's

verdict is in favor of the original defendant, they need go no further; but if they find in favor of plaintiff, they should also specify in their verdict (if there are issues then pending between the original and additional defendants), whether or not the latter, or any of them, are liable over to the original defendant, or jointly or severally liable with him, for the amount awarded to plaintiff, and the extent of such liability, and the cause should thereafter proceed to final judgment as in other actions. . . . Whenever the final judgment . . . is adverse to both the original and the additional defendants, plaintiff, upon receiving satisfaction from the original defendant, should mark the suit to the use of the latter, and the additional defendants will be liable to and execution may issue against them at his instance, for the proportion of the recovery adjudged to be payable by them, without any further proceedings being required to establish such liability."

As pointed out above, if in the instant case satisfaction is received from the original defendant, the latter can recover from Turner & Westcott, Inc., only the amount payable by Turner & Westcott under the Workmen's Compensation Agreement. In *First Nat. Bk. of Pittsburgh v. Baird,* 300 Pa. 92, 150 A. 165, this court, in discussing the sci. fa. act, said: "The only limitation on the trial judge's power . . . is that whatever course is taken must be 'according to equitable principles,' that is, it must be just and fair from the standpoint of equity and good conscience."

The Turner & Westcott corporation was brought into this case not by the plaintiff but by defendant Fahs. Between these two defendants an issue arose, each defendant seeking to impose on the other liability for the accident. The jury found that both were liable (and that Chatburn, the milk truck driver, was also liable). This finding and the judgment entered thereon is of no benefit to the plaintiff *as against Turner & Westcott, Inc.,* for plaintiff's recovery *against this additional defendant* is limited by the compensation agreement. But the judg-

ment against Turner & Westcott is of benefit to defendant Fahs and additional defendant Chatburn in the event that plaintiff obtains satisfaction of the judgment from them or either of them, in which event plaintiff's judgment shall be marked to the use of the paying defendant so that the latter may thereby obtain contribution from the other defendants. The limit of the contribution which may be obtained by the paying defendant from Turner & Westcott is the limit of *that* defendant's liability to the plaintiff under the Compensation Act. Section 319 of the Workmen's Compensation Act of 1915 provides: "Where a third person is liable to the employe or the dependents for the injury or death, the employer shall be subrogated to the right of the employe or the dependents against such third person, but only to the extent of the compensation payable under this article by the employer."

Whatever plaintiff has received from Turner & Westcott, Inc., must be deducted from whatever plaintiff may attempt to collect at any time from defendant Fahs or defendant Chatburn upon the judgment under review. Whenever Turner & Westcott, Inc., has paid to the then legally designated proper party the total of what under the Workmen's Compensation agreement it was bound to pay because of Sell's death while in the course of his employment, it is entitled to have plaintiff's judgment against it satisfied of record. It would be repugnant to the letter and spirit of the Workmen's Compensation Act and would frustrate its purposes to hold that an employer who brings himself within the Act could notwithstanding that fact be held liable to the payment of a judgment obtained by an employee against him as an additional defendant and against an original defendant, after both had been adjudged guilty of negligence resulting in the death of that employee. Such a judgment serves as against the employer only the function herein accredited to it. Subject to these limitations in the use to be made of the judgment, it is affirmed.