Lettie CHERRY and Arthur Cherry, Administrator of the Estate of James F. Cherry, Deceased, her husband
and
Lettie Cherry, as parent and natural guardian of William Cherry,
a minor,
and
Lettie Cherry and Arthur Cherry, Administrator of the Estate of James F. Cherry, Deceased, in their own right

v.

CITY OF PHILADELPHIA, Pa., Defendant and Third-Party Plaintiff,

v.

Luish LONDON, Third-Party Defendant.

Civ. A. No. 23430.

United States District Court
E. D. Pennsylvania.

Sept. 23, 1960.

Elwood S. Levy, Philadelphia, Pa., for plaintiffs.

I. Jerome Stern and Richard K. Masterson, Asst. City Sols., Philadelphia, Pa., for defendant.

A. Leon Higginbotham, Jr., and William H. Brown, III, Philadelphia, Pa., for third-party defendant.

VAN DUSEN, District Judge.

This case is before the court on third-party defendant's post-trial motions to set aside the verdict and enter judgment for such defendant (Document No. 41) and for a new trial and judgment n. o. v. (Document No. 42) after a jury returned a verdict for third-party plaintiff in the

---

1. The main action was settled and third-party plaintiff and third-party defendant have stipulated that, for the purposes of the third-party action, the damages are stipulated to be $20,000. See letter of April 12 attached to order of April 14 (Document No. 31).

2. The United States Court of Appeals for the Third Circuit has recently used this language:

trial of the third-party action only.[1] For brevity, the parties will be referred to here as plaintiff and defendant, rather than third-party plaintiff and third-party defendant.

The following summary of the testimony taken from pages 2 and 3 of defendant's brief is substantially complete, in view of the requirement that the version most favorable to the jury's verdict is applicable:[2]

"On May 24, 1957, at or about 7:00 p. m., the third-party defendant, hereinafter referred to as the defendant, was operating his motor vehicle in a westerly direction on the Industrial Highway, east of its intersection with 70th Street, in the far right hand, or northernmost lane. (N. T. 95.) At that time, the third-party plaintiff, hereinafter referred to as the plaintiff, was operating a City of Philadelphia trash truck in a southerly direction on 70th Street, north of its intersection with the Industrial Highway. (N. T. 36, 37.)

"Mr. William Alston, the City driver, testified that he was proceeding south on 70th Street at about 25 miles per hour. (N. T. 38.) He further testified that he brought his vehicle to a stop at the edge of the concrete portion of the Industrial Highway in obedience to a stop sign which was located some distance north of the intersection of 70th Street and the Industrial Highway, with the front end of his truck extending about two feet into the Industrial Highway (N. T. 38.) At this time, Mr. Alston said he observed the defendant's vehicle ap-

"'* * * the trier of fact is at liberty within bounds of reason to reject entirely the uncontradicted testimony of a witness which does not produce conviction in his mind of the witness' testimony.'"

See Wooley et al. v. Great Atlantic & Pacific Tea Co., 3 Cir., 281 F.2d 78, 80.

proximately 100 feet away, coming west on the Industrial Highway at about 50 or 60 miles per hour.

"Mr. London testified on cross-examination that he was proceeding west on the Industrial Highway at about 35 to 40 miles per hour; that when he was 100 feet from the intersection he slowed down to a speed of 25 miles per hour, and that when he was 50 feet from the intersection, he jammed on his brakes (N. T. 104 & 105) because at this time the plaintiff's vehicle was already on the concrete portion of the Industrial Highway (N. T. 106)."

The pictures show that the vehicles collided with great force (Exhibits P–7 to P–10). The Accident Investigation Officer testified that, in view of the damage to the truck, defendant's car must have been going between 40 and 60 miles per hour. There were almost no obstructions or improvements on the land between the two roads (see Exhibits P–2 to P–5 and D–2 to D–7), so that each driver had an unobstructed view of the other approaching the intersection.

I. Contention that Mr. London is entitled to the entry of judgment in his favor as a matter of law.

 Under the facts recited above, the jury was justified in finding that Mr. London was driving at an excessive speed as he approached the intersection, particularly in view of his admitted ability to see an approaching truck on the intersecting street. The requirement that any negligence the jury might find must also be a proximate cause of the collision was explained in the charge (N. T. 176 and 184–6).[3] The trial judge was required to submit this case to the jury as far as the defendant was concerned (cf. N. T. 214).

II. Contention that Mr. London is entitled to a new trial.

The jury withdrew from the court room after the charge at 10:51 A.M. (N. T. 194) and returned to the court room with the following message at 3:50 P.M.: "The members of the jury can't seem to come to any agreement" (N. T. 200 and Exhibit C).[4] The trial judge supplemented the charge and sent the jury out again to deliberate at 3:56 P.M. (N. T. 197). The jury returned with its verdict for the plaintiff at 4:15 P.M. (N. T. 201).

 Defendant objects to the trial judge's language in the supplemental charge, urging the jury to try to reach agreement, in these, among other, respects:

1. Language urging minority to consider position of majority.

The charge contains this language at N. T. 195:

"* * * if the majority feels one way about the case, those who are in the minority ought to consider whether they are so sure of their position. Even in a criminal case the United States Supreme Court has said that where the majority feels one way those who find themselves in the minority should re-examine the reasons for their position, and if after stating them they cannot persuade the majority, they ought to consider whether other people of good will who are serving and trying to do a good job also may not have something which they ought to be listening to.

---

3. Also, the charge quoted from the applicable Pennsylvania statutes (75 P.S. §§ 501(a) and 573(c) at N. T. 178–180) and an appellate court case (Schall v. Pen Transit Co., 1945, 352 Pa. 129, at page 132, 42 A.2d 278, at N. T. 180–1). See, also, Maio v. Fahs et al., 1940, 339 Pa. 180, 185–186, 14 A.2d 105. The cases relied on by defendant's brief and reply brief are not pertinent to the facts and

issues involved in this trial, where contributory negligence was not in issue and circumstantial evidence was relatively unimportant.

4. The jury was sent to the Benjamin Franklin Hotel for lunch, which process usually takes at least 1½ hours out of the time available for jury deliberation.

"Now, nobody wants you to give up a conscientiously held opinion, but, on the other hand, this case does not seem to me to be one of extreme difficulty. I mean, it would not be submitted to you if you could not decide it one way or the other."

At the very end of the supplemental charge, the trial judge used this language (N. T. 197):

"Now, I urge you to please go out again and discuss this matter and see if you cannot come to a decision. If you cannot, I do not want anybody to give up a conscientiously held view."

This language was proper under the decision of Allen v. United States, 1896, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528, most recently referred to with approval in United States v. Curcio, 2 Cir., 1960, 279 F.2d 681, 682. See, also, Lehigh Valley R. Co. v. Allied Machinery Co., 2 Cir., 1921, 271 F. 900, 904; Railway Express Agency v. Mackay, 8 Cir., 1950, 181 F.2d 257, 262, 19 A.L.R.2d 1248.

2. References to the photographs.

■ Defendant complains that too much emphasis was placed on the photographs in the supplemental charge. However, the supplemental charge also told the jury to "consider it all—consider everything" (N. T. 196). Also, the supplemental charge did not purport to be a repetition of the entire charge and it must be read in connection with the basic charge. See Luterman v. City of Phila-

delphia, 1959, 396 Pa. 301, 152 A.2d 464; cf. Burch v. Reading Co., D.C.E.D.Pa. 1956, 140 F.Supp. 136, 149, affirmed 3 Cir., 1957, 240 F.2d 574, certiorari denied 1957, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed. 2d 914.

■ Even if the trial judge had told the jury that, in his personal opinion, the pictures were the most important evidence, this would have been proper if the decision of the facts had been clearly left to the jury.[5] The federal courts have consistently held that a trial judge is entitled to give his personal opinion of, and comment on, the evidence even in a criminal case as long as he leaves the ultimate determination of the facts to the jury. See United States v. Kravitz, 3 Cir., 281 F.2d 581. Both the charge and the supplemental charge emphasized to the jury that it was for them to determine the facts, as follows:

A. At N. T. 172, the jury was told that it was its function to determine facts.

B. They were repeatedly told that they should disregard the judge's memory of the testimony if it did not coincide with their memory.[6]

C. This language appears at N. T. 181:

"* * * you have got to determine what the facts are—that is your very difficult job—and then apply them to this law as I have read it to you.

"I think that you know that you must consider all the circumstances

---

5. It is noted that in the quotation from Jones v. Williams, 1948, 358 Pa. 559, 563, 58 A.2d 57, relied on by defendant, the trial judge based the speed at which the car was traveling on "the damage it sustained" and underlined the above-quoted language, whereas the Accident Investigation Officer in this case based his estimate that defendant was traveling from 40 to 60 miles an hour on the damage to the other vehicle (namely, plaintiff's truck). The pictures showed this damage to the truck (see Exhibit P-9). It is also noted that the opinion in this Jones case reversed the lower court for granting a new trial and directed that the verdict of the jury be upheld.

6. N. T. 171 and 175. This language appears at N. T. 175:

"As I say, during my description of the law here, I am going to have to refer to the testimony, but you do not go out and say, 'Oh, well, the Judge said the testimony was this, and, therefore, it must have been,' because I can have a bad memory just the same way anybody else can. When I tell you something in order to make a point clear, it is only my memory of what the witnesses have said, and if your memory is different, you must follow your memory, because it is for you to determine the facts; * * *."

in determining whether there is negligence, all the surrounding factors; you must look at the pictures; you must remember the testimony as best you can."

D. The last statement made to the jury before it retired was this language (N. T. 193–4):

"Also, I just want to, of course, warn you again that anything that I say as to the facts is to be controlled by your finding and not by any statement of my memory unless it accords with your memory and your findings. In other words, when I say that if Mr. Alston stopped in a certain position, then, as I remember the evidence—and you accept all his testimony—you would find Mr. London negligent, that is just my memory of it. That is no instruction on your part, because your memory of Alston's testimony may be quite different from mine. It is for you to determine what are the facts and apply them to the law as I gave it to you."

E. At N. T. 196 of the supplemental charge, the trial judge told the jury "Consider everything. You have got to make up your mind as to who was telling the truth. * * * Now, what is the fact? What do the pictures show? These are the sort of things that it seems to me you ladies and gentlemen have to consider and in your own good judgment determine."

A careful consideration of the record establishes that refusal to grant a new trial is not "inconsistent with substantial justice." See F.R.Civ.P. 61, 28 U.S.C.[7]

An order will be entered dismissing the post-trial motions of the third-party defendant.

7. As to paragraphs 11 and 12 of the motion for new trial, it is noted that counsel for plaintiff stated at the conclusion of the charge: "We want to thank your honor for a fair charge with the exception of those notations" (N. T. 192). As to paragraph 14, defendant never requested a charge on the "sudden emergency doctrine" (see F.R.Civ.P. 61) and the indefiniteness of Mr. London's testimony on the time when he alleged Mr. Alston entered the intersection would have made a charge on this point confusing.