George F. KIM, Plaintiff,

v.

MICHIGAN LADDER COMPANY, a corporation, Defendant and Third-Party Plaintiff,

v.

KEYSTONE FLOORS, INC., Third-Party Defendant.

Civ. A. No. 18253.

United States District Court
W. D. Pennsylvania.

Sept. 10, 1962.

Theodore Tracy, of Stokes, Lurie & Tracy, Pittsburgh, Pa., for plaintiff.

Robert S. Grigsby, of Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant and third-party plaintiff.

David H. Trushel, of Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for third-party defendant.

MARSH, District Judge.

At the trial of this diversity action, the jury returned a verdict in favor of the plaintiff, George F. Kim, and against the defendant, Michigan Ladder Company (Michigan), in the sum of $10,-000.00, and a verdict in favor of Michigan as third-party plaintiff and against Keystone Floors, Inc. (Keystone), Kim's employer and the third-party defendant, for contribution to the extent allowed by law. Judgments were entered on the verdicts. Michigan paid Kim $9,975.00, and the judgment against it was satisfied.[1] Michigan now moves the court to alter and amend the judgment for contribution in its favor against Keystone to a sum certain which it contends in its proposed findings, as corrected, should be $2,490.82, plus one-half the costs. We think the motion should be granted.

From the evidence adduced at trial and at the hearing on the motion, the court makes the following

### FINDINGS OF FACT

1. This action was brought on October 23, 1959, by Kim against Michigan to recover damages for personal injuries sustained in an accident which occurred on January 15, 1959, on the premises of Keystone, while he was engaged in the performance of his duties as an employee of Keystone. At the time of the trial, Kim was 45 years old.

2. On July 27, 1960, Michigan as third-party plaintiff filed a complaint against Keystone as third-party defendant alleging that Keystone's negligence was the cause of plaintiff's damages, and demanding "judgment against third-party defendant, Keystone Floors, Inc., for all sums that may be adjudged against defendant, The Michigan Ladder Company, in favor of plaintiff, George F. Kim."

3. At the conclusion of the trial in this case, the jury returned a verdict in favor of the plaintiff in the sum of $10,000.00 against the defendant, and returned a verdict in favor of Michigan as third-party plaintiff and against the third-party defendant for contribution to the extent allowed by law. Judgments were entered on the verdicts.

4. The judgment in favor of the plaintiff was satisfied when Michigan paid plaintiff the sum of $9,975.00 and the costs of the trial.

5. Prior to the accident, the plaintiff had been employed by Keystone on a fixed salary basis of $110.00 per week as a warehouse superintendent and salesman, and his job required him to lift and move merchandise, to supervise eight other employees, to climb ladders, to unload trucks, to conduct inventories, all of which required eight to ten hours of work per day, much of which was conducted on his feet.

6. As a result of the accident, the plaintiff sustained a comminuted fracture of the os calcis of the right foot, and became afflicted with traumatic arthritis of the subastragular joint of his right foot which has been progressive in nature.

7. Immediately following the accident, the plaintiff did not work for a period of three days. On the fourth day

---

1. The plaintiff gave Michigan credit for the payment of a $25.00 doctor bill made on behalf of his employer.

after the accident, the plaintiff returned to work on crutches and continued to perform limited work at full salary until the end of April, 1959, at which time he was compelled to terminate his employment because he was physically unable to perform a substantial portion of the duties required of him.

8. As a result of the accident, the plaintiff has sustained a 50 per cent disability which continues to the present time. Cf. Cunningham v. Alex Guerrina & Sons, 188 Pa.Super. 288, 146 A.2d 318 (1958).

9. Because of the disability resulting from the accident, the plaintiff was unemployed for a period of 35 weeks from May 1, 1959, to January 1, 1960, during which time he contracted for occasional jobs involving the installation of carpet which he performed with the help of two other persons, and he received net income therefrom for that period of $600.00, averaging approximately $150.00 per quarter.

10. Because of the disability resulting from the accident, the plaintiff was unemployed for a period of 50 weeks from January 1, 1960, to December 15, 1960, during which time he contracted for occasional jobs of installing carpet which he performed with the help of two other persons, and he received net income therefrom for that period of $1,533.51.

11. From the date of the accident to May 1, 1959, the plaintiff did not sustain any loss of earnings.

12. From May 1, 1959 to December 31, 1959, the plaintiff's earning power was $17.14 per week ($600.00 ÷ 35 weeks = $17.14 his average weekly wage).

13. Applying the statutory formula for the year 1959 (66⅔% x ($110.00 − $17.14) x 35 weeks), plaintiff's loss of earning power exceeds the statutory maximum of $27.50 per week.[2] On the basis of 35 weeks at $27.50 per week, the em-

ployer would have been liable to pay compensation under the Pennsylvania Workmen's Compensation Act to the extent of $962.50 for the year 1959.

14. From January 1, 1960 to December 15, 1960, the plaintiff's earning power was $30.67 per week ($1,533.51 ÷ 50 weeks = $30.67 his average weekly wage).

15. Applying the statutory formula for the year 1960 (66⅔% x ($110.00 − $30.67) x 50 weeks), plaintiff's loss of earning power exceeds the statutory maximum. On the basis of $27.50 per week, the employer would have been liable to pay compensation under the law to the extent of $1,375.00 for the year 1960.

16. During the six-month interval following the accident of January 15, 1959, Dr. Roy S. Temeles treated the plaintiff for his injury and his bill amounted to $130.00, and Dr. M. A. Sherman treated the plaintiff for his injury and his bill for that period amounted to $23.32.

17. On December 15, 1960, plaintiff was employed by Better Built Supply Company at the salary of $500.00 per month. In March, 1961, his salary was reduced to $400.00 per month. In September, 1961, plaintiff was "left out". The reduction in wages and the dismissal resulted from "general business conditions" rather than from any disability due to the injury.

18. The total extent to which Keystone is liable under the Pennsylvania compensation law is $2,490.82.[3]

19. Neither the plaintiff-employee nor Keystone, the employer, ever filed a petition for workmen's compensation because of the injury sustained by plaintiff on January 15, 1959, and no agreement for compensation was ever entered into between the plaintiff and Keystone.

### DISCUSSION

Keystone, the employer, was brought upon the record as a third-party defend-

---

2. At the time of the accident, the Act of 1956, Feb. 28, P.L. (1955) 1120, § 1, amending § 306(b) of the Pennsylvania Workmen's Compensation Act, 77 P.S. § 512, was in effect.

3. Keystone has not challenged the figures and formulae used in the computation submitted by Michigan and substantially adopted by the court.

ant more than 18 months after the accident of January 15, 1959. Since the plaintiff-employee failed to pursue his right to workmen's compensation within the 16-month period specified by the statute of limitations [4] and is forever barred from making any such claim, Keystone contends that it is not liable to the employee under the Pennsylvania Workmen's Compensation Act in any amount and thus is not liable to contribute any amount to Michigan, the third-party plaintiff, because of the judgment which Michigan paid to plaintiff. We do not agree.

By virtue of the jury's verdict Keystone and Michigan are joint tortfeasors, and Keystone, as plaintiff's employer, is liable to contribute to Michigan to the extent allowed by law. However, this obligation is limited by the benefits specified by the Workmen's Compensation Act, 77 P.S. § 1 et seq. Brown v. Dickey, 397 Pa. 454, 155 A.2d 836 (1959); Maio v. Fahs, 339 Pa. 180, 14 A.2d 105 (1940); Stark v. Posh Construction Company, 192 Pa.Super. 409, 162 A.2d 9 (1960).

With respect to the statute of limitations, the general rules are stated as follows: "The fact that the statute of limitations will bar the plaintiff from a direct recovery against the additional defendant *can have no effect on the defendant's right to enforce his claim of contribution or indemnity.*" (Emphasis supplied.) Goodrich-Amram, Rules of Civil Procedure, vol. 3, § 2252(a) (9), p. 38.

"On general principles a defendant cannot, of course, maintain his impleader if the statute of limitations has run on the claim which he has against the third party. It should be recognized, however, that *the applicable statute is not that which governs the plaintiff's claim against the defendant.* If defendant has a claim over against the third-party defendant—such as a claim for indemnity, contribution, etc.— the statute usually will not commence to run against the defendant (third-party plaintiff) and in favor of the third-party defendant until judgment has been entered against the defendant,[5] or the defendant has paid the judgment.[6] Thus a defendant may implead a third party to enforce against him a right of contribution, *even though the statute may have run on any claim by plaintiff directly against the third party.*" (Emphasis and footnotes supplied.) Moore's Federal Practice, 2d ed., vol. 3, ¶ 14.09, pp. 421–422.

The foregoing appears to be the law of Pennsylvania, although we have not found any case which specifically involves the statute of limitations contained in the Workmen's Compensation Act.[7]

We recognize that the statute of limitations in the Workmen's Compensation Act is not an ordinary statute of limitations, but a "statute of repose", and when the time has elapsed, as here, it extinguishes "not only the remedy, but the right". Overmiller v. D. E. Horn & Co., 191 Pa.Super. 562, 566–567, 159 A.2d 245, 247 (1960); Ratto v. Pennsylvania

4. Act of 1956, Feb. 28, P.L. (1955) 1120, § 1, amending § 315 of the Workmen's Compensation Act, 77 P.S. § 602.

5. Wnek v. Boyle, 172 Pa.Super. 222, 92 A.2d 701 (1952), rev'd on other grounds 374 Pa. 27, 96 A.2d 857 (1953). See also, Goodrich-Amram, Rules of Civil Procedure, vol. 3, § 2252(a) (9).

6. See Smith v. Whitmore, 270 F.2d 741 (3d Cir. 1959) wherein it was held that *the accrual of the right to a money judgment for contribution takes place upon payment by one joint tortfeasor of more than his pro rata share of the common liability.*

7. Wrongful death actions: Shaull v. A. S. Beck New York Shoe Co., Inc., 369 Pa. 112, 85 A.2d 698 (1952); MacMurray, Adm'r v. Yankee Lines, Inc., 77 Pa.Dist. & Co.R. 104 (1950); Dunlevy v. Blair, 68 Pa.Dist. & Co.R. 70 (1949). Tort claims: Adams v. Vacquier, 48 F.Supp. 275 (W.D.Pa.1942); Carey v. Petrilak, 62 Pa.Dist. & Co.R. 626 (1948); Werther v. Finn, 58 Pa.Dist. & Co.R. 331 (1947); Battle v. Laurel Line Taxicab Co., 52 Pa.Dist. & Co.R. 534 (1945). Cf. Carlin v. Pennsylvania Power & Light Co., 363 Pa. 543, 545, 70 A.2d 349, 351 (1950). See also, Goodrich-Amram, Rules of Civil Procedure, vol. 3, § 2252(a) (10).

Coal Co., 102 Pa.Super. 242, 156 A. 749 (1931). But liability for contribution is exclusively a matter between the third-party plaintiff, Michigan, and the third-party defendant, Keystone, and is not affected by the inability of the plaintiff, Kim, to obtain relief from his employer under the Workmen's Compensation Act. Cf. Goodrich-Amram, Rules of Civil Procedure, vol. 3, § 2252(a) (10).

This conclusion is buttressed by Puller v. Puller, 380 Pa. 219, 221, 110 A.2d 175, 177 (1955), and Fisher v. Diehl, 156 Pa. Super. 476, 40 A.2d 912 (1945), in which the additional defendants, i. e., husbands, had complete immunity in suits brought by the plaintiffs, i. e., wives and minor child, but it was held, nonetheless, that the negligent defendants could recover contribution from the negligent additional defendants, the husbands, by way of contribution. "The theory is that as between the two tortfeasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done." Puller v. Puller, supra, 380 Pa. at p. 221, 110 A.2d at p. 177.

Keystone cites Socha v. Metz, 385 Pa. 632, 123 A.2d 837 (1956) in support of its position. There the plaintiff, the decedent's administratrix, had issued execution on a judgment which she had recovered against the decedent's employer in a tort action. It was held that the remedy of the employee and his representatives under the Workmen's Compensation Act was exclusive, and the writ of execution was quashed. On its facts, the cited case is not apposite to the case under consideration. The employee here did not sue his employer in the tort action and, of course, did not obtain a judgment against it.

In determining the amount of Keystone's liability for contribution to Michigan under the Workmen's Compensation Act, we held a hearing as it did not appear from the trial record what the

money judgment should be. This was the procedure followed by the trial judge in Hawn v. Pope & Talbot, Inc., 99 F.Supp. 226, 100 F.Supp. 338 (E.D.Pa. 1951), rev'd on other grounds 198 F.2d 800 (3d Cir. 1952), aff'd 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

Taking into consideration the plaintiff's age, his anatomical disability of 50%, his mental outlook, his occupational background, his long experience in the occupation of carpet laying, which he can perform to a limited extent despite his physical impairment, and the fact that he has been able to obtain some work in this field by contracting for carpeting jobs, it is evident that plaintiff sustained a partial disability as a result of the injury which may be permanent.

In ascertaining his loss of earning power, we have considered his wages before and after injury, the character and extent of his physical injury and disability, his productivity and efficiency in the same occupation as compared to what it was immediately prior to the injury, and his ability to earn wages in that occupation despite his physical impairment. Benedict v. Fox, 192 Pa.Super. 197, 159 A.2d 756 (1960). We conclude that Keystone would be liable to the plaintiff for the maximum amount of compensation for partial disability, i. e., $27.50 per week, from the time he resigned from Keystone on April 30, 1959 because of the injury he sustained [8] until he was employed by Better Built Supply Company on December 15, 1960, for a salary in excess of the amount he was earning while employed at Keystone. Michigan does not contend that any liability exists for any period following December 15, 1960.

## CONCLUSIONS OF LAW

1. Michigan is entitled to a money judgment against Keystone by way of contribution to the extent allowed by the

8. Although plaintiff was disabled from the time of the accident through April 30, 1959, no benefits were payable under the Workmen's Compensation Act since he continued to receive his full salary. See: Benedict v. Fox, supra at p. 202, 159 A. 2d at p. 758.

Pennsylvania Workmen's Compensation Act.

2. The equitable right of Michigan to contribution from Keystone is not affected by the failure of Kim, the employee, to claim or secure by agreement workmen's compensation from Keystone, the employer, prior to the bar of the statute of limitations.

3. Michigan is entitled to a money judgment against Keystone in the sum of $2,490.82 and one-half the trial costs paid by Michigan.

4. Costs of the hearing should be paid by Keystone.