450 F.2d 1012
 Francis C. O'NEILL and Aetna Casualty & Surety Co.
v.
UNITED STATES of America, Appellant,
v.
AMBROSE-AUGUSTERFER CORPORATION.
Francis C. O'NEILL and Aetna Casualty & Surety Co.
v.
UNITED STATES of America.
v.
AMBROSE-AUGUSTERFER CORPORATION, Appellant.
 Nos. 19094, 19095.
 United States Court of Appeals,
Third Circuit.
 Argued June 11, 1971.
Decided Sept. 22, 1971.
 
 Ronald R. Glancz, Dept. of Justice-Appellate Section, Washington, D. C., for the United States.
 David F. Kaliner, Philadelphia, Pa., L. Patrick Gray, III, Asst. Atty. Gen., Louis C. Bechtle, U. S. Atty., Morton Hollander, J. F. Bishop, Attys., Dept. of Justice, Washington, D. C., Kaliner & Joseph, Philadelphia, Pa., on the brief, for Ambrose-Augusterfer.
 Leonard Levin, Llanerch, Pa., for O'Neill & Aetna.
 Before STALEY and ADAMS, Circuit Judges, and GARTH, District Judge.
 OPINION OF THE COURT
 STALEY, Circuit Judge.
 
 
 1
 The United States of America appeals from a judgment in favor of Francis C. O'Neill for damages due to injuries he sustained while working in a Government building.[1] The United States filed a third-party complaint against O'Neill's employer, Ambrose-Augusterfer Corporation ("Ambrose"). Ambrose appeals from a judgment in favor of the Government requiring Ambrose to indemnify the United States for the damages awarded to O'Neill.
 
 
 2
 A proper understanding of the present posture of this case requires an account of its protracted history. The action was brought under the Federal Tort Claims Act.[2] As required by that Act, the case was tried before a district judge sitting without a jury. Findings of Fact and Conclusions of Law were made to the effect that there was no negligence on the part of the United States, that plaintiff O'Neill had been contributorily negligent, and that his employer, Ambrose, had been negligent and had caused his injuries. Judgment accordingly was entered in favor of the United States on plaintiff's claim; and since the United States was absolved of responsibility, judgment was entered in favor of Ambrose, the third-party defendant, despite the finding of its negligence. 276 F.Supp. 724 (E.D.Pa., 1967).
 
 
 3
 Plaintiff O'Neill appealed to this court, arguing that a Pennsylvania industrial safety statute had been violated and calling our attention to Pennsylvania decisions which have imposed civil liability for such a violation. Even though O'Neill had not urged the applicability of the statute prior to appeal, we viewed the case as one involving an expressed policy of Pennsylvania with regard to industrial injuries. Invoking our power under 28 U.S.C. Sec. 2106 to dispose of cases before us in such manner "as may be just under the circumstances," we chose not to apply the rule precluding consideration of issues which are raised for the first time on appeal.
 
 
 4
 In addition, we found that the district court's conclusion that O'Neill had been contributorily negligent was based upon findings of fact which were conclusory.
 
 
 5
 Accordingly, the judgment was vacated, and we directed that on remand:
 
 
 6
 "* * * the District Court shall consider and make appropriate findings on the plaintiff's claim of liability against the United States because of failure to comply with the safety requirements of the Act of May 18, 1937, and the defendant's claim of O'Neill's contributory negligence. For this purpose it shall afford the parties an opportunity to present additional evidence." 411 F.2d at 146.
 
 
 7
 Upon remand, the case was retried, resulting in a judgment in favor of O'Neill and a judgment of indemnity on the third-party complaint against Ambrose. These appeals followed.
 
 
 8
 The factual situation out of which O'Neill's action for personal injuries arose was fully set forth in our earlier opinion by Judge Freedman. 411 F.2d 139 (C.A.3, 1969). Here we are concerned only with those issues raised with regard to the district court's actions following remand. We will, therefore, not restate facts unless they are germane to those issues.
 
 
 9
 Following remand, additional evidence was taken by the district court, and the evidence taken at the first trial was received in evidence as part of the second trial. The district court subsequently found that the United States had in fact failed to comply with the Pennsylvania safety statutes and that O'Neill's injuries were incurred as a result of the Government's violation of the standards established by the Pennsylvania Bureau of Labor and Industry. The United States contends, as it must, that these findings are "clearly erroneous" under F.R.Civ.P. 52(a) and therefore require a reversal of the judgment against it.
 
 
 10
 In discussing its finding that the Government had failed to comply with the Pennsylvania Safety Standard Act, the district court recognized that the provisions of the Act are not self-executing. The Supreme Court of Pennsylvania in Matulonis v. Reading R. R. Co., 421 Pa. 230, 219 A.2d 301 (1966), ruled that it is necessary that the state's Department of Labor and Industry promulgate regulations applicable to the basic conditions in question in order to place the Act in operation. After a careful review of the regulations pertinent to the Government's post office equipment and the testimony on behalf of the plaintiff by Mr. Oravecz, director of the bureau primarily responsible for setting standards and drafting safety regulations,[3] the district court concluded that rules had been promulgated that made the Act applicable in this case.
 
 
 11
 We agree with the district court's statement that the crucial issue is whether the regulations can fairly be said to apply to conveyor belts, specifically the post office conveyor belt where O'Neill sustained his injuries. The district court accepted as an established fact that the conveyor is a form of mechanical transmission of power and as such is embraced within the guidelines set forth in the Act.[4] This conclusion is, of course, vehemently disputed by the Government. The "clearly erroneous" test, however, requires that this court be convinced on the whole record that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
 
 
 12
 As stated by Judge Freedman in the first appeal of this case, the Pennsylvania industrial safety legislation is not to be grudgingly construed in view of its purpose to secure the proper guarding of machinery of every description so as to prevent preventable harm. 411 F.2d at 143; see also, American Ice Co. v. Porreca, 213 F. 185 (C.A.3, 1914). Mr. Oravecz inspected the post office equipment, and it was his opinion as a safety engineer and the chief enforcement officer of the Pennsylvania Bureau of Industrial Standards that the Government had violated state industrial regulations and that the violations were responsible for O'Neill's accident. We conclude that the district court's finding that the Government's operation of the conveyor failed to comply with the applicable Pennsylvania industrial safety regulations is not clearly erroneous. We further conclude that the Government has failed to demonstrate that the district court's finding that O'Neill's injuries were incurred as a result of the Government's violation of those regulations is clearly erroneous.[5]
 
 
 13
 The Government urged as a defense that O'Neill had been contributorily negligent. As noted earlier, our remand required the district court to make adequate and more specific findings relating to the defense of contributory negligence. We note with some concern that the finding with regard to contributory negligence is strikingly similar to those causing the original remand. The sole finding of fact with regard to O'Neill's alleged contributory negligence is finding No. 16, which states, "Plaintiff's operation of an electric drill at the premises was in accordance with established usage and there is no evidence that he failed to use due care." We are satisfied, however, that the basis for the district court's finding is made clear by its opinion which accompanies the findings of fact and conclusions of law and that a second remand is not required. The district court's opinion adequately discussed the Government's allegations and concluded that O'Neill had acted as a reasonable and prudent person would under all the circumstances. We do not find the district court's ruling to be clearly erroneous. The judgment in favor of O'Neill against the United States will, therefore, be affirmed.
 
 
 14
 We must now consider the judgment of indemnity recovered by the Government against Ambrose, O'Neill's employer. We are met at the outset by a claim on the part of Ambrose that the Government had stipulated that it was entitled only to contribution from Ambrose and that such contribution could not exceed Ambrose's liability as an employer under the Pennsylvania Workmen's Compensation Act. We have carefully examined the record in this case, including the record of the first trial. Our examination discloses that no such stipulation was entered into by the parties.
 
 
 15
 In awarding the Government full indemnity, the district court relied on the decisions in Fisher v. United States, 299 F.Supp. 1 (E.D.Pa., 1969), rev'd on other grounds, 441 F.2d 1288 (C.A.3, 1971); and Petite v. Mehl, 333 F.Supp. 207 (E.D.Pa., filed Jan. 19, 1970). Prior to Fisher, a third-party tortfeasor had never been awarded common law indemnity against a Pennsylvania Workmen's Compensation employer. In that case, the court stated that Pennsylvania law in this area was unsettled and commented that the question was one that would be best resolved by legislative determination because of the substantial and conflicting policies involved. The court felt, however, that faced with the necessity of deciding the question in the absence of such a determination, it should face the policy considerations squarely rather than to engage in speculation as to legislative intent. 299 F.Supp. at 30.
 
 
 16
 Fisher viewed the question as a conflict between a policy permitting a secondarily negligent third party to recover full indemnity from a primarily negligent employer, thereby fairly adjusting the rights between the outsider and the negligent employer, and a policy denying such indemnity because it allows the indirect accomplishment of that which the compensation statute prevents from being directly accomplished, that is, a common-law recovery by the employee against the employer. The court was persuaded by the argument advanced by Professor Larson, one of the leading commentators on workmen's compensation laws, to the effect that the employer should be required to indemnify the third party in this situation. Professor Larson argues that to hold otherwise would take away rights (such as the right to indemnity) from the third party which he had prior to the passage of a compensation statute to which he is not a party and from which he receives no benefit.[6] 299 F.Supp. at 30.
 
 
 17
 We do not view the law of Pennsylvania to be as unsettled on this point as the court in Fisher considered it to be. The Pennsylvania Workmen's Compensation Act was first enacted in 1915.[7] This court attaches some significance to the fact that in the 56-year history of Pennsylvania Workmen's Compensation, no employer participating in the compensation plan has ever been required to pay more than the amount of his statutory liability under the Act. Thus, for example, when faced with reconciling the requirements of the Uniform Contribution Among Tortfeasors Act[8] with the limited liability and exclusive remedy provisions of its compensation statute, the Pennsylvania Supreme Court effected a compromise. It allowed recovery of contribution against an employer but limited the recovery to the employer's Workmen's Compensation liability. Maio v. Fahs, 339 Pa. 180, 14 A.2d 105 (1940).
 
 
 18
 We, of course, are aware of the distinction between contribution and indemnity, and we note that while only Pennsylvania allows even a limited right to contribution against a compensation employer, there are several states that allow a right to indemnity such as that awarded in Fisher.[9] Since the Government's right to indemnity in this case is controlled by Pennsylvania law, we must rule on the question as we think the Supreme Court of Pennsylvania would rule. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).
 
 
 19
 We will first of all examine the policy considerations discussed in Fisher. There is merit in the previously described argument that persuaded the court in Fisher to allow indemnity. We, however, see an even more compelling policy argument against permitting the recovery of full indemnity from the employer, one not discussed in Fisher and one peculiarly applicable in Pennsylvania. Because of certain provisions in the Pennsylvania Constitution, a compulsory workmen's compensation act is not permissible.[10] Thus, the legislature enacted a voluntary compensation program in which the employer and employee must elect to participate.[11] Not only would the result reached in Fisher and in the instant case be contrary to the spirit of the Act, it obviously would encourage employers to reject the Act. That he may no longer be immune to law suits even though he participates in and contributes to the compensation program would be a consideration of great weight to an employer. In this industrial age, a viable workmen's compensation law is a necessity as a matter of public policy. We, therefore, view the result reached in Fisher and in the instant case with great concern.
 
 
 20
 This concern, we are convinced, is shared by the Supreme Court of Pennsylvania. For, as we have already noted, indemnity has never been awarded against a compensation employer in the 56-year history of the Act. Further, in each of its three major decisions in the area of recovery-over by a third party against a compensation employer, that court has repeated its view that if the recovery is not limited to the employer's liability under Workmen's Compensation, the limited liability feature of the Act will be subverted. Elston v. Industrial Lift Co., 420 Pa. 97, 216 A.2d 318 (1966); Brown v. Dickey, 397 Pa. 454, 155 A.2d 836 (1959); and Maio v. Fahs, 339 Pa. 180, 14 A.2d 105 (1940). Indeed, in both Brown and Elston, the court expressed its repugnance for a situation wherein an employer would be exposed to a potentially greater liability in those circumstances where a third-party tortfeasor was involved than when his own negligence was the sole cause of the injury. And in Maio, the decision that created Pennsylvania's doctrine of limited contribution by employers, the court stated that it would be repugnant to both the letter and to the spirit of the Act and would frustrate its purposes to hold that an employer who brings himself within the Act could, notwithstanding that fact, be held liable for the payment of a judgment obtained by an employee against him as an additional defendant.
 
 
 21
 We are well aware that these contribution cases may not be deemed controlling in an action for indemnity, but we consider them to be repeated expressions of Pennsylvania's concern that its compensation employers' sole liability for employee injuries be limited to their absolute liability under the statute.
 
 
 22
 We turn now to an examination of the legal theory by which the court in Fisher and in the instant case awarded indemnity against the employer. The district court in both Fisher and theinstant case concluded that while the United States had been negligent and was liable to the plaintiff, its negligence had been secondary and passive, and that in each case it had been the active and primary negligence of the plaintiff's employer that had caused the injuries. The court then held that the Government was entitled to indemnity from the employer under the common law of Pennsylvania, citing Quinones v. Township of Upper Moreland, 293 F.2d 237 (C.A.3, 1961).[12]
 
 
 23
 The court itself recognized the difficulty with its reliance on Quinones. That case did involve an analysis and application of principles of primary and secondary negligence for the purpose of indemnity. That indemnity, however, was awarded pursuant to a specific provision contained in a written contract between the parties. Accordingly, Quinones cannot be considered authority for a common-law-based requirement that a compensation employer indemnify a third-party tortfeasor.
 
 
 24
 We are convinced that principles of primary and secondary negligence provide no support for the indemnity award at issue. As stated by Larson:
 
 
 25
 "* * * whatever name is given to the obligation placed on a primary or active wrongdoer to reimburse a secondary or passive wrongdoer, this claim for reimbursement is barred by the exclusive-remedy clause, so long as there is no actual contract or relationship from which the legal obligations of reimbursement springs." 2 Larson, Workmen's Compensation 76.10 at p. 234 (1970 ed.).
 
 
 26
 In a situation like the instant case, absent a contract between the parties,[13] the cases hold that an active wrongdoer has no implied obligation capable of penetrating the exclusiveness rule of compensation laws.[14]
 
 
 27
 We conclude that the necessity as a matter of public policy that Pennsylvania employers not be driven to reject its Workmen's Compensation Act requires a reversal of the judgment of indemnity recovered in this case by the Government. The overwhelming majority of decisions in workmen's compensation jurisdictions is in accord. Professor Larson prefaces his policy discussion on this question with the comment that the scales are quite evenly balanced and seem to tip in favor of whichever party's misfortunes are under scrutiny at the moment.[15] We are convinced by Pennsylvania's repeated demonstrations of concern for its employers' misfortunes that this indemnity judgment is not supported by Pennsylvania law nor would it be permitted by the Pennsylvania Supreme Court. Of course, nothing in our decision affects the Government's right to contribution from Ambrose as that right has been limited by Pennsylvania law.
 
 
 28
 The judgment in favor of O'Neill against the United States will be affirmed. The judgment in favor of the United States against Ambrose-Augusterfer Corporation will be vacated and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 O'Neill was awarded $111,040.24, less the amount he would receive from Workmen's Compensation. His injuries were sustained while he was working in a United States Post Office building at 30th and Market Streets, Philadelphia, Pennsylvania
 
 
 [2]
 28 U.S.C. Sec. 1346(b) and 2671 et seq. The Act further provides for the application of the law of the place where the act or omission complained of occurred, in this case Pennsylvania
 
 
 [3]
 Mr. Oravecz testified that he was director of the Pennsylvania Bureau of Industrial Standards
 
 
 [4]
 The statute provides in pertinent part:
 "(b) All belts, pulleys, gears, chains, sprockets, shafting, and other mechanical power transmission apparatus, stationary engines, electrical equipment, and apparatus shall be properly guarded to protect workers from injury." 43 Purdon's Pa.Stat.Ann. Sec. 25-2(b).
 Plaintiff O'Neill introduced into evidence, through Mr. Oravecz, the regulations for Mechanical Power Transmission Apparatus promulgated by the Pennsylvania Department of Labor and Industry. Those regulations, in the opinion of Mr. Oravecz, were applicable to the post office conveyor system on which O'Neill was injured, and required that guards be installed to protect workers from injury.
 
 
 [5]
 The district court concluded that the Government's failure to have proper guards on the conveyor, as well as its failure to shut down the conveyor when it knew that O'Neill was working in the adjacent area, was a breach of its duty to protect its invitee, O'Neill, from injury
 
 
 [6]
 2 Larson, Workmen's Compensation 76.52 (1970 ed.)
 
 
 [7]
 Enacted June 2, 1915, P.L. 736. See 77 Purdon's Pa.Stat.Ann. Sec. 1
 
 
 [8]
 Act of July 19, 1951, P.L. 1130, 12 Purdon's Pa.Stat.Ann. Secs. 2082-2089
 
 
 [9]
 For a comprehensive discussion of the policies and reasons causing the split of authority regarding indemnity by compensation employers, see 2 Larson, Workmen's Compensation 76.43 and 76.44 (1970 ed.)
 
 
 [10]
 See Rich Hill Coal Co. v. Bashore, 334 Pa. 449, 7 A.2d 302 (1939); see also, Anderson v. Carnegie Steel Co., 255 Pa. 33, 99 A. 215 (1916)
 
 
 [11]
 77 Purdon's Pa.Stat.Ann. Secs. 431 and 462
 
 
 [12]
 299 F.Supp. at 34. Fisher based the indemnity award on Quinones. The district court in the instant case relied on Fisher
 
 
 [13]
 The leading case allowing a recovery of indemnity from a compensation employer is Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567 (1938). The employer had entered into a construction contract with the third party, and the court found that an implied obligation of care with an accompanying indemnity obligation were within the scope of the contract. There is no contract between the parties in the instant case, nor was there in Fisher; however, we think it to be black letter contract law that any contract is subject to the laws of the controlling jurisdiction. Thus, any ordinary contract is subject to workmen's compensation laws, and only specific agreements by the parties, such as in Quinones, can alter their effect on the liability of employers for employee injuries
 We also note that the policy considerations in Westchester were not as compelling, for the New York compensation law is compulsory. The Pennsylvania Act, as we have pointed out, is voluntary.
 
 
 [14]
 2 Larson, Workmen's Compensation 76.44 (1970 ed.). The leading case holding that indemnity cannot be recovered is Slattery v. Marra Bros., 186 F.2d 134 (C.A. 2, 1951), an opinion by Chief Judge Learned Hand analyzing the New Jersey Compensation Act. Judge Hand attributed the theory of indemnity based upon a difference between the kinds of negligence of two tortfeasors (i. e., primary-secondary) to a judicial yielding to the strong temptation to throw the entire loss upon the more guilty of the two, a temptation which arises when contribution, stricti juris, is impossible. However, he concluded that "there is nobody of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act; and we are at a loss to see any tenable principle which can support such a result."
 
 
 [15]
 2 Larson, Id. at 76.51