Teresa Anne RYDEN, et al., Plaintiffs,

v.

JOHNS–MANVILLE PRODUCTS, et al., Defendants,

and Related Cases.

Civ. A. Nos. 77–644, et al.

United States District Court, W. D. Pennsylvania.

July 17, 1981.

---

## OPINION

DIAMOND, District Judge.

In each of these diversity actions plaintiff seeks to recover damages from the manufacturer or supplier of certain asbestos products for injury or death allegedly suffered by plaintiff or plaintiff's decedent (hereafter, plaintiff) from the inhalation of asbestos fibers during the course of his employment. Because the injury or death in each instance was employment-related under The Pennsylvania Workmen's Compensation Act (Compensation Act) of June 2, 1915, P.L. 736, as amended, 77 P.S. § 1 et seq., plaintiff was precluded by that law from instituting a common-law action for damages against his employer, and in none of these cases was such an action brought. Now, however, several of the original defendants either have filed third-party complaints joining plaintiff's former employers or have tendered motions for such joinder. In each case, the original defendants seek contribution or indemnity on the ground that the employer's negligence contributed to plaintiff's alleged injury or death.

The issue presently before the court is whether the joinder of these former employers is permissible. In motions to dismiss or for summary judgment, the employers claim that § 303(b) of the Compensation Act, 77 P.S. § 481(b) (1974), prohibits their joinder for any purpose. The defendants who seek joinder (Defendants) respond in the alternative that (a) The Pennsylvania Comparative Negligence Act (Negligence Act) of July 9, 1976, P.L. 855, No. 152, 17 P.S. §§ 2101, 2102, as amended, added by the act of April 28, 1978, P.L. 202, No. 53, § 10(89), 42 Pa.C.S.A. § 7102, enacted subsequent to § 303(b) of the Compensation Act, requires, or at least permits, joinder of any and all culpable parties; or (b) that, in any event, under the holding in *Bell v. Koppers*, 481 Pa. 454, 392 A.2d 1380 (1978), employers whose employees contracted an occupational disease prior to the effective date of § 303(b) may be joined. For the reasons set forth below, we will sustain the objections to joinder in all cases except where the plaintiff "was injured" prior to the effective date of § 303(b), filed a claim for benefits under the Compensation Act or The Pennsylvania Occupational Disease Act (O.D. Act) of June 21, 1939, P.L. 566, No. 284, as amended, 77 P.S. 1201 et seq., and was awarded benefits under one of those Acts, or the claim remains in litigation, or the claim was denied because plaintiff's "injury" was not an occupational disease covered by the Compensation or O.D. Act.

## I. BACKGROUND

In 1915 Pennsylvania enacted its first workmen's compensation statute. This act authorized an employee and his employer contractually to establish their respective rights and duties in the event of an employment-related injury to the employee. If the parties accepted the terms of that act,[1] a fundamental change in their common-law relationship resulted. In place of the common-law rule that provided for the recovery of damages resulting from work-related injuries only where the injured employee could prove that his injuries were caused by the negligence of his employer and where proof of the employee's contributory negligence or assumption of the risk would bar recovery, the Compensation Act virtually assured compensation benefits to an injured

---

1. As originally framed, either party had the option of exempting himself from coverage under the act. Coverage is now essentially mandatory. 77 P.S. § 431 (1974).

workman for work-related injuries regardless of who, if anybody, was at fault. Thus, the negligence of the employee or a fellow worker, or the employee's assumption of the risk, or even the absence of fault of the employer no longer would defeat or reduce the employee's right to recover benefits under the law. 77 P.S. § 41. In return, the employee surrendered his right to institute a common-law action for damages against his employer and was limited in his recovery to specific sums scheduled under the Act. 77 P.S. § 481(a); *Swartz v. Conradis*, 298 Pa. 343, 148 A. 529 (1929).

The relationship between the injured employee and a third party whose negligence caused the employee harm and between the employer and such third parties was not altered so radically. The employee retained his right to sue third parties for damages and the employer obtained a statutory right of subrogation to the rights of the employee against a negligent third party to recover the compensation benefits paid by the employer. 77 P.S. § 671; *See Stark v. Posh Construction Company*, 192 Pa.Super. 409, 162 A.2d 9 (1960). Further, in *Maio v. Fahs*, 339 Pa. 180, 14 A.2d 105 (1940), the Pennsylvania Supreme Court held that in an action by an employee against a third party, the latter could join the plaintiff-employee's allegedly negligent employer as an additional defendant for purposes of obtaining "contribution" [or indemnity] from the employer up to the extent of his liability under a compensation agreement entered into pursuant to the Compensation Act.[2]

The *Maio* ruling prevailed for years. *See Socha v. Metz*, 385 Pa. 632, 123 A.2d 837 (1956); *Brown v. Dickey*, 397 Pa. 454, 155 A.2d 836 (1959). And the law regarding joinder of an employer thus remained essentially unchanged until February 5, 1975, the effective date of the amendment to § 303 of the Compensation Act. Subsection (b) of the amended section, 77 P.S. § 481(b), provides in its pertinent part:

(b) In the event injury or death to an employe is caused by a third party, then such employe ... may bring [his] ... action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action. (matter in brackets added)

From the outset, the Pennsylvania appellate courts construed this provision liberally in favor of granting to the employer total immunity from suit. In *Hefferin v. Stempkowski*, 247 Pa.Super. 366, 372 A.2d 869 (1977), for example, the Superior Court, stating that § 303(b) provided employers with "total immunity from third-party actions", ruled that it was an absolute bar to the joinder of an employer. *Id.* at 368, 372 A.2d at 871. In so holding, *Hefferin* rejected the trial court's conclusion that § 303(b) was merely a codification of the existing law established in *Maio v. Fahs*. Any doubt regarding the scope of § 303(b) immunity after *Hefferin* clearly was dispelled by *Bell v. Koppers Co., Inc.*, 481 Pa. 454, 392 A.2d 1380 (1978) and *Arnold v. Borbonus*, 257 Pa.Super. 110, 390 A.2d 271 (1978). In *Arnold* the court specifically ruled that § 303(b) prohibited the joinder of an employer even for the limited purpose of determining his *subrogation rights* or *liability for contribution*.

Significantly, both *Hefferin* and *Arnold*, but particularly the latter, recognized the potential inequities which could result from their construction of § 303(b), especially that an injured employee might recover twice[3] or that a negligent employer could

---

**2.** As we set forth more fully later, what the court actually did was to *subrogate* the third-party tortfeasors to the plaintiff's rights under

a workmen's compensation agreement with the employer of plaintiff's decedent.

**3.** He could recover once through workmen's compensation payments from his employer or

entirely escape payment including that of his workmen's compensation liability.[4] *See Hefferin, supra,* (Van der Voort, J., concurring); *Arnold, supra,* (Spaeth, J., concurring and dissenting). In either case, a third-party tortfeasor only partially at fault in causing injury to the employee of another could be required to bear the entire cost of the employee's injury, and the employee could be the beneficiary of a windfall "double" recovery. Nevertheless, both the *Hefferin* and *Arnold* courts concluded that notwithstanding this potential for apparent injustice their construction of § 303(b) was consistent with the intent of the legislature. *Hefferin, supra,* 247 Pa.Super. at 369–70, 372 A.2d at 872; *Arnold, supra,* 257 Pa.Super. at 114, 390 A.2d at 273. And recently, in *Tsarnas v. J. & L. Steel Corp.,* 488 Pa. 513, 412 A.2d 1094 (1980), § 303(b), as construed by *Hefferin* and *Arnold,* withstood constitutional attack.

## II. IMPACT OF THE COMPARATIVE NEGLIGENCE ACT

Notwithstanding the consistent and virtually unbroken line of appellant authority in Pennsylvania holding that § 303(b) confers absolute immunity on an employer covered by the Compensation Act from suit by an employee or third-party tortfeasor arising out of work-related injuries to the employee, the Defendants now insist that the Negligence Act requires a different result. Since the Pennsylvania appellate courts have not yet resolved this specific question, it becomes our duty to predict how the Pennsylvania Supreme Court ultimately will rule. *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3rd Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

We begin by looking at the Negligence Act. This statute, enacted in 1976, more than one year after the effective date of § 303(b), provides:

§ 7102. *COMPARATIVE NEGLIGENCE*

(a) *General Rule.*—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the *defendant or defendants against whom recovery is sought,* but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) *Recovery against joint defendant; contribution.*—Where recovery is allowed against more than one *defendant,* each *defendant* shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all *defendants against whom recovery is allowed.* The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any *defendant* who is so compelled to pay more than his percentage share may seek contribution. 42 Pa.C.S.A. § 7102(b). (emphasis in text supplied).

The Defendants contend that this act, which was not at issue in *Hefferin, Arnold* or *Bell,* requires a different result on the joinder question from that reached in those cases because it changes the prior law and requires the trier of fact to apportion re-

---

his employer's insurance carrier. He could recover a second payment for the full amount of his damages from the third-party tortfeasor. And, then, if in view of the employee's recovery from the negligent third party, the employer asserted a subrogation claim against the employee to recover all or part of the aforesaid workmen's compensation payments, the employee could defeat this claim by proving that the employer was at fault in causing the inju-

ries for which the employee had recovered workmen's compensation benefits from the employer and damages from the third party.

**4.** If in the subrogation action the employee fails to prove the employer's fault, the employer will have recouped his compensation payments even though his negligence in fact may have contributed to the injury.

sponsibility among *all persons responsible* for a tortious injury, and in order to discharge that duty where an employee sues a third party for work-related injuries, the trier of fact must have before it the employer whose negligent conduct allegedly contributed to the injury. If joinder is not permitted, Defendants assert, inequities could result, such as a partially culpable third party having to pay an entire damage award, or an employer whose negligence contributed to his employee's injuries nevertheless recouping workmen's compensation payments via subrogation. These arguments, which are only a slight variation on the theme previously rejected by the *Hefferin* and *Arnold* courts, *See*, fns. 3 and 4 and related text *supra*, are not persuasive. Therefore, in predicting how the Pennsylvania Supreme Court ultimately will rule, we continue to rely on the *Hefferin, Arnold*, and *Bell* decisions and conclude that it will re-affirm those rulings. We offer the following reasons.

■ First, we note that the Defendants' argument is based on a premise which is fundamentally false. The Negligence Act does not, as they would have it, provide for apportionment among *all persons responsible* for a tortious injury. It merely provides for apportionment among those *defendants* against whom recovery is *allowed*. There is no suggestion in that statute that all possible tortfeasors be brought into court, and certainly no requirement that this be done to achieve the purposes of the act. The trier of fact is simply to apportion liability on a percentage basis among those defendants on the record against whom recovery is allowed.

Second, focusing on possible inequities or practical problems resulting from the employer's absence on the record is not the proper perspective from which to resolve this question. As we have seen, the *Hefferin* and *Arnold* courts flatly rejected this approach. And since the question is whether *Hefferin* and *Arnold should* still apply, the more pertinent inquiry would seem to be whether, in the context of employment-related injuries, the potential problems under the Negligence Act are qualitatively different from those under the prior law and the Uniform Contribution Among Joint-Tortfeasors Act (Contribution Act) of July 19, 1951, P.L. 1130, 12 P.S. § 2082 et seq., which it replaced or modified. Prior to the Negligence Act, plaintiff's contributory negligence was a complete bar to recovery and the liability of joint tortfeasors was pro rata regardless of the extent to which their respective negligence contributed to the harm suffered by the tort victim. If, as we believe, there has been no qualitative change in the law vis-a-vis joint tortfeasors, then it seems logical to conclude that *Hefferin* and *Arnold*, which arose in the context of that law, remain fully viable, and that the inequities and trial problems of which defendants continue to complain should provide no basis for concluding that the Pennsylvania Supreme Court will reach a result different from that reached in those cases.

■ The only qualitative change brought about by the Negligence Act is found in subsection (a) and has to do with the effect of plaintiff's contributory negligence. Simple contributory negligence is no longer a complete bar to a plaintiff's recovery. 42 Pa.C.S.A. § 7102(a). The apportionment of liability among joint tortfeasors on a percentage-of-fault basis, found in subsection (b) of the act, 42 Pa.C.S.A. § 7102(b), is simply a quantitative refinement of the prior law *which also provided for apportionment and contribution among joint tortfeasors*, but on a pro rata basis without consideration of the relative degree of fault among them. 12 P.S. § 2083(1), (2). Thus, the Negligence Act presents no problem significantly different from those considered and rejected as immaterial by the *Hefferin* and *Arnold* courts, for it long had been desirable to have all joint tortfeasors on the record to adjudicate their fault, if any, and to provide for contribution, or credit therefor, among them if possible.

The fact that a partially at fault tortfeasor might have to pay an entire judgment without any credit or contribution for workmen's compensation paid by a possibly

negligent employer, or that such an employer might recoup workmen's compensation benefits paid without ever having adjudicated the question of whether his negligence caused or contributed to the employee's injuries, resulted from the enactment of § 303(b) and did not result from the advent of comparative negligence. These "potentials for injustice" remain virtually the same as recognized by Judge Spaeth in *Arnold*. And it seems clear that for present purposes it simply makes no difference that under prior Pennsylvania law joint tortfeasors were deemed to be jointly and severally liable for all of the damages suffered by a non-negligent tort victim and as to each other were deemed to be *equally* liable irrespective of any consideration of their relative percentage of fault, whereas under the present law the respective liability of joint tortfeasors may be apportioned according to the percentage of each tortfeasor's negligence of the total negligence of all the tortfeasors. And, we are satisfied that the Negligence Act created nothing new in the relationship among the parties to suits of this sort that should lead us to conclude that the Pennsylvania Supreme Court will overrule or modify the controlling Pennsylvania authority previously cited in this opinion.

Finally, we think that it is worthwhile to point out that the *Hefferin* and *Arnold* courts in construing § 303(b) looked to its language and particularly to its legislative history and concluded solely on the basis of their analysis of those factors that § 303(b) conferred on the employer absolute immunity from suit by a third party. These courts did not find it necessary to, and in fact did not, construe § 303(b) in the light of the Uniform Contribution Among Tortfeasors Act or any other existing legislation. Of course, the language and legislative history of § 303(b) remain the same today as when the *Arnold, Hefferin* and *Bell* courts first ruled. Therefore, unless subsequent legislation has expressly or impliedly repealed § 303(b) in whole or in part, it is logical to conclude that the Pennsylvania Supreme Court will construe it tomorrow as it did yesterday.

■ Defendants do not contend that the Negligence Act expressly repealed any portion of § 303(b), and we conclude that neither did it implicitly repeal any portion thereof.

■ The Statutory Construction Act of 1972 provides, with exceptions not applicable here, that "(c) [i]n all other cases, a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable." Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1971. This is consistent with the general principle of statutory construction that there is a presumption against the implicit repeal of one law by a later enactment. *Cedarbrook Realty, Inc. v. Nahill*, 484 Pa. 441, 399 A.2d 374 (1979); *See generally* 1A C. Sands, *Sutherland Statutory Construction* § 23.10 (4th ed. 1972).

The presumption against implicit repeal has not been overcome here, since the two statutory provisions plainly are not irreconcilable. The Negligence Act simply provides that "[w]here recovery is allowed against more than one *defendant*, each *defendant* shall be liable for ...", 42 Pa.C.S.A. § 7102(b) (emphasis added), a certain proportion of the total award based on a percentage-of-total-fault formula. The statute, thus, applies solely to parties on the record and does not purport to provide for apportionment of fault among all possible responsible entities. In short, it provides for apportionment where recovery has been had against more than one defendant, and there is nothing in the statute remotely suggesting a legislative intent to alter or even tamper with the existing substantive law which does control the question of *who may be made a defendant* by defining the liability of entities for tortious conduct or by statutorily providing for the immunity from suit of entities who otherwise might be subject to suit under common-law principles.

Section 303(b), on the other hand, was part of a basic overhaul of the Pennsylvania Workmen's Compensation and Occupational Disease Laws, the specific purpose of which

was to alter the existing substantive law in order to provide an employer under the Compensation Act with immunity from common-law suit. Since the employer's liability for damages already was fixed and limited to the benefits scheduled under the Compensation Act, § 303(b) made no change in this regard, its *sole* and *specific* purpose being to provide suit immunity. *Hefferin, supra,* 247 Pa.Super. at 369–70, 372 A.2d at 870–71; *See Tsarnas, supra,* 488 Pa. at 519, 412 A.2d at 1097; *Arnold supra; Bell, supra.*

The *Hefferin* court set forth in some detail the legislative history of § 303(b). It pointed out that the Pennsylvania Legislature in the years 1972 through 1974 undertook "... a massive overhaul of the state's workmen's compensation law and occupational disease law." *Hefferin, supra,* 247 Pa.Super. at 368, 372 A.2d at 870. It was the intention of the legislature to have the Pennsylvania law comply with many of the essential recommendations made by The National Commission on State Workmen's Compensation Laws in its report to the President and Congress in July, 1972. This report contained eighty-four specific recommendations for improvement of state workmen's compensation laws, nineteen of which were deemed essential. Two of the essential recommendations addressed the question of the exclusivity of the remedies under workmen's compensation laws and the immunity of employers from common-law negligence actions when an employee was disabled or killed as the result of a work-related injury or certain diseases. The *Hefferin* court found that the Pennsylvania Legislature intended by the amendments to Section 303 to implement these two essential recommendations and thereby to grant employers total immunity from employee and third-party common-law actions. To accomplish this, *Hefferin* indicates that the legislature adopted substantially verbatim the language in Section 5 of the Longshoreman's and Harbor Workers' Compensation Act of 1927, as amended, 33 U.S.C. § 901, et seq., which grants employers covered by that act 'total immunity from third-party actions and provides subrogation rights for

employers to the full extent of their workmen's compensation lien.

The *Hefferin* court stated with regard to the United States Supreme Court's construction of the Longshoreman's and Harbor Workers' Compensation Act:

... The Supreme Court has made it clear that the purpose of the above section of the Act was to restrict the remedy available to an employee against the employer to compensation, and to close to the employee, and to third parties, any recourse against the employer in tort for negligence. *Mahnich v. Southern S/S Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S/S Co.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *American Mutual Liability Co. v. Matthews,* 182 F.2d 322 (2d Cir. 1950).

*Id.* at 369, 372 A.2d 871.

With that legislative history as background, and in view of the presumption against the implicit repeal of laws, it is most difficult for us to conclude that slightly more than one year after the effective date of one of the principal elements of its "massive overhaul" of the state's workmen's compensation laws, the Pennsylvania Legislature intended to repeal it at all, let alone implicitly through the language, nonspecific for that purpose, which appears in the Negligence Act. What was said in *Brown v. Dickey, supra,* in response to the argument that the rule in *Maio v. Fahs* had been overruled implicitly by the subsequently enacted Uniform Contribution Among Tortfeasors Act, *supra,* applies with equal force to any suggestion that 42 Pa.C.S.A. § 7102 implicitly repeals § 303(b): "Had the legislature meant to make such an important change in the compensation employer's liability, it would have done so expressly in the [subsequent act]." *Dickey, supra,* 397 Pa. at 459, 155 A.2d at 839, (matter in brackets added) *See also* Statutory Construction Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1933.

In any event, it is obvious that these two acts are in fact reconcilable and that they can coexist peacefully, for there is nothing in § 303(b) which precludes an apportionment of liability among multiple *tort-defendants*, and there is no language in the Negligence Act which requires that employers be brought on the record as defendants in order that there be apportionment among those defendants who are on the record.

We conclude, therefore, that the comparative negligence law provides no basis for a refusal to apply the present rule as established in *Hefferin, Arnold,* and *Bell,* or for the conclusion that those holdings will be overruled in the future.

The question remains under *Bell v. Koppers, supra,* as to those "injuries" that predated the effective date of § 303(b).

### III. INJURIES PRIOR TO 1975

■ The effective date of § 303(b) was February 5, 1975, but, as we have seen, the court held in *Bell v. Koppers, supra,* that § 303(b) was to be given prospective application only and that the old rule permitting joinder of an employer for contribution or indemnity to the extent of his workmen's compensation liability continued to apply in those instances in which the "injury" preceded the effective date of § 303(b).

Although many of the joinders here being sought allegedly involve pre-1975 injuries, the employers nonetheless resist joinder on several grounds. First, they contend that even under the old rule the employer could be joined only to the extent of his compensation *liability,* and, they say, the employers have incurred no such liability because the employees never filed compensation claims and now are time-barred from doing so under the Compensation and O.D. Acts. 77 P.S. §§ 602, 1415. Next they argue that the "injury", as that term has been construed under the Compensation and O.D. Acts, for which the plaintiffs seek recovery, in fact did not occur until after 1975, thus the new rule totally barring joinder applies.

The question of whether to be subject to joinder under the rule of *Maio v. Fahs* an employer must actually have incurred workmen's compensation liability in the form of an award in favor of, or payments otherwise being made to, an employee as opposed to merely to have been *potentially* subject to such liability, has never been addressed specifically by the Pennsylvania courts. The employers note that *Maio v. Fahs* speaks of the employer being joinable to the extent of his "*liability* to the [employee] under the Compensation Act." *Maio, supra,* 339 Pa. at 192, 14 A.2d at 111. (emphasis added). And we know that the plaintiff was receiving compensation benefits in that case, but the precise question before us was not an issue there. Furthermore, the employers point out that the Compensation and O.D. Acts fix and limit the extent of their liability exposure to injured employees and argue that if the employer incurs no actual liability under those Acts, his liability exposure is completely eliminated with the running of the time provided in them for the injured employee to file a claim for compensation benefits.

The third parties attempting joinder counter by arguing that not having incurred any actual liability under the Compensation and O.D. Acts, the employers are not now entitled to the protection of those Acts at all. Second, the third parties rely on the general common-law rule in Pennsylvania that while a special immunity rule may prevent a plaintiff from directly suing a particular tortfeasor, this will not prevent a second tortfeasor sued by the plaintiff from joining the first for contribution. *See* Robert Levin, Russell Levin, L. Levin, *Summary of Pennsylvania Jurisprudence, Torts II* § 646 (1958). Defendants offer as analogous the rule that although one spouse may not sue another for negligently inflicted injuries, the negligent spouse may nonetheless be joined for contribution by a third-party sued by the injured spouse. *Puller v. Puller,* 380 Pa. 219, 110 A.2d 175 (1955). Finally, defendants contend, that even though a statute of limitations does bar plaintiff's action against one jointly liable with a defendant for plaintiff's injuries,

this does not prevent the subsequent joinder of that individual by the defendant for contribution. *Smith v. Falcone*, 85 D. & C. 463 (Northhampton Cty. 1953). Thus it is argued here that even though the injured employee may be time-barred from recovery against his employer under the Compensation and O.D. Acts, that does not prevent a third-party product-supplier from joining the employer for contribution, at least to the extent that the employer might have been liable under those Acts.

■ We reject the Defendants' arguments and conclude that under the prior rule only those employers who actually incurred compensation liability could be joined for "contribution."

We believe that *Maio v. Fahs, supra,* and especially *Brown v. Dickey, supra,* are not only dispositive of this issue, but also cast light on several other questions raised by the Defendants.

It is clear enough in *Maio* that the limited departure there permitted from the exclusive remedies against an employer provided for in the Compensation Act was for the sole and specific purpose of preventing the manifest inequity of allowing a plaintiff to recover "twice" for the same injury. However, the court while fashioning a means by which to prevent the unjust enrichment of a plaintiff did so, at least in part, under principles of contribution.[5] But *Maio* was not, strictly speaking, a case of contribution among joint tortfeasors. The employer already was paying compensation benefits to the plaintiff by virtue of a compensation agreement entered into between the plaintiff and the employer pursuant to the Compensation Act, which was irrespective of the employer's negligence. It was statutorily immune from a common-law action in tort by the injured employee, and, therefore,

could not be a joint-tortfeasor. *See Brown, supra,* 397 Pa. at 461, 155 A.2d at 840. The subsequent finding by the jury that the employer was negligent did not establish its obligation to pay the injured employee nor did it result in an increase in compensation payments. Instead, it resulted in the diversion of future workmen's compensation payments from the injured employee to the third-party tortfeasor and in the deduction from the plaintiff's judgment against the non-employer tortfeasors of an amount equal to the compensation payments which previously had been made under the agreement. To that extent, the payments were coming from the victim's pocket and not from those of the so-called "joint-tortfeasor" (except, of course, in the sense that if not negligent the employer might have recouped these payments via subrogation). The *Maio* ruling, therefore, was not for contribution in the classic sense of *joint-tortfeasors* sharing the "common burden as reason and natural justice dictate." *Maio, supra,* 339 Pa. at 189, 14 A.2d at 109.

Indeed, the specific holding of the court is that the non-employer defendants are *subrogated* to the plaintiff's right against his negligent employer:

Since compensation is being paid under that agreement it would be manifestly inequitable to permit plaintiff to recover *the entire amount* of her judgment against the other two defendants or against either of them. Therefore, in the event that she proceeds to enforce the judgment against either or both of the other two defendants, she must not be permitted to collect more than the amount of the judgment with interest, *less the amount paid her under the compensation agreement.* If the judgment thus reduced is paid by either of the other

---

5. The employer was brought on the record by a writ of scire facias issued under a statute authorizing a defendant to "bring upon the record, as an additional defendant, any other person alleged to be ... jointly or severally ... liable ... with him...." Act of April 10, 1929, P.L. 479, § 1, as amended, 12 P.S. § 141. The court approved this practice on the theory that the *liability* of the employer and third

party was alleged to be joint, noted that a verdict *fixing joint liability* had been returned, and concluded that the verdict thus "... equally fix[ed] Fahs' [the third party's] right of contribution from his *joint-tortfeasors,* Turner & Westcott, [the employer] and the driver Chatburn." *Maio, supra,* 339 Pa. at 188, 14 A.2d at 109.

[matter in brackets and emphasis added]

defendants (or by both of them jointly), the defendant so paying the judgment shall be entitled to be subrogated to plaintiff's rights under the Workmen's Compensation Agreement. *Maio, supra*, 339 Pa. at 190, 14 A.2d at 110.

Even though the rationale and specific holding in *Maio* indicate that in the final analysis equitable considerations based on concepts of unjust enrichment and subrogation were the basis of the court's decision, and notwithstanding the *Brown v. Dickey* clarification of *Maio* which we discuss next, references to principles of contribution so intertwine the opinion that to this day it is cited as authority for the proposition that employers are subject to contribution up to the limit of their liability under the Compensation Act.[6] *See Tsarnas, supra.*

The *Brown v. Dickey* court took a closer look at this concept of contribution and specifically ruled that the Compensation Act did in fact eliminate all "contribution" from employers coming within the Act. The court in *Dickey* was asked to overrule *Maio* on the grounds that "(1) the Workmen's Compensation Act does not limit the third party tortfeasor's *right of contribution*; (2) if the Act were so construed, the Act would be unconstitutional; (3) the ruling in *Maio* is in direct conflict with the Uniform Contribution Among Tortfeasors Act, Act of July 19, 1951, P.L. 1130, 12 P.S. §§ 2082–2089; (4) *Maio* has been overruled in principle by later decisions of this Court and (5) the *Maio* decision has prevented settlements and encouraged litigation." *Id.* 397 Pa. at 457, 155 A.2d at 837. (emphasis added).

The court rejected all of those grounds for overruling *Maio* and re-affirmed that holding. In so doing it made several points significant here. First, it re-affirmed that an employer's liability for work-related injuries is limited to the amount of the Workmen's Compensation award.

Appellant argues that the Workmen's Compensation Act does not and cannot limit the right of a third party to contribution. While the Act is mainly concerned with the relationship between employer and employee, it is an expression of the legislative will that an employer's liability, in a case involving injury to an employee during the course of his employment is *strictly* limited to the amount of the Workmen's Compensation *award*. Since the employer has been deprived by the Act of his common law defenses, such as contributory negligence, assumption of risk and the fellow servant rule, it would be grossly inequitable to impose a common law liability upon him in the form of a judgment of contribution without permitting him to interpose any defenses. To do so would deprive appellee of his property by legislative fiat. We cannot so interpret the Workmen's Compensation Act. *Id.* at 458–9, 155 A.2d at 838. (second emphasis added)

Second, it held that as to injuries coming within the Compensation Act, a third-party tortfeasor had *no right of contribution either equitable or under the Uniform Contribution Among Tortfeasors Act.* The court declared that:

> ... It is clear that the Legislature, in passing that Act, meant to establish an elective method of eliminating all common law rights of action against the employer arising out of injuries to employees. This being so, the appellant's equitable right, bolstered by the Uniform Act [Uniform Contribution Among Tortfeasors Act] *must bow to the statutory right of the employer-appellee to be free from common law liability.* In reading the two acts together, this is the only reasonable conclusion to be drawn. The contention that this interpretation works an unfairness on Brown, the third party tortfeasor, by making him bear the entire verdict less the amount of the Workmen's Compensation award, is not valid. *Id.* at 459–60, 155 A.2d at 839. (emphasis and matter in brackets added)

6. Perhaps it is because of this view of the *Maio* holding that Defendants here can now argue for "contribution" from employers even in cases where the employees have never filed for compensation benefits and therefore are not recovering "twice" for their injuries.

. . . .

... In the instant case, however, we have the elimination by statute of any trespass cause of action whatsoever against the employer, and the substitution of Workmen's Compensation procedures. *There is no common liability based in tort, for the employer is simply not liable in tort.* [Citation omitted] He retains only statutory liability. *To allow the third party tortfeasor even the limited right of contribution up to the amount of the employer's Workmen's Compensation liability,* as we do in Pennsylvania is most generous indeed. He is not so well treated in other jurisdictions. See Annotation, 53 A.L.R.2d 977 (1957). *Id.* at 462, 155 A.2d at 840. (emphasis added)

The court then summarized its ruling:

We have re-examined *Maio v. Fahs,* supra, in great detail. We have looked to the Uniform Contribution Among Tortfeasors Act, passed subsequent thereto, and found it inapplicable under these facts because of the lack of a joint liability. The limited right of contribution that does exist in Pennsylvania is based on the equitable principle that the plaintiff should not recover twice for the same wrong.[7]

*Id.* at 462–3, 155 A.2d at 840.

■ Thus the court strongly reaffirmed the *Maio* holding that the right of "contribution" under the Compensation Act was based *solely* on the equitable principle that an injured party should not recover twice for the same injury and rejected the argument that it was or should be based on the traditional principle underlying contribution; namely, that joint tortfeasors should jointly bear the costs of their negligence. It follows that if the injured employee is not "recovering twice" there is no basis under *Maio* or *Brown* for so-called "contribution," and we so hold.

■ In view of this holding on the basic "contribution" issue, the question of whether the Compensation or O.D. Act statute of limitations has or has not run as to the employee's compensation-occupational-disease claim is only indirectly material. If the employee has made, or within the statutory period makes, a compensation claim and obtains an award against an employer for injuries which occurred prior to February 5, 1975, that employer can be joined here without regard to the statute of limitations of the Compensation or O.D. Act. This will serve the *Maio* and *Brown* ends of preventing the plaintiff-employee who has received or is receiving compensation benefits from recovering "twice" for the same injury. And if for any reason the employer who has paid a compensation award is not joined for "contribution," he can seek subrogation from plaintiff in an appropriate forum, and this, too, will provide an opportunity to prevent the plaintiff-employee from retaining double recovery. *See Stark v. Posh, supra,* 192 Pa.Super. at 416, 162 A.2d at 12. If, however, the plaintiff-employee elects not to pursue a compensation claim then, obviously, there is no danger that he will recover twice and, consequently, no need or basis for allowing "contribution" from his employer.[8] Thus, the fact that the statute of limitations under the Compensation or O.D. Act has not run means nothing, since unless and until plaintiff pursues the compensation claim to an award there is no basis or, indeed, source for "contribution" from his employer.

We conclude, therefore, that only those employers may be joined in these actions who actually have incurred liability under the Compensation or O.D. Acts for pre-1975 injuries and have made, or are making, or will be making payments to plaintiff-employee as a result of this liability. Of

---

7. We note that even this court which expressly holds that there is no right to contribution, nevertheless continues to use the term as it was employed in *Maio.*

8. It is possible, though quite unlikely, that after obtaining an award against a third-party tortfeasor the employee would then make a timely

compensation claim. In that event, there is nothing to prevent the third-party tortfeasor from intervening in the compensation claim to protect his right to "contribution." *See Stark v. Posh, supra,* 192 Pa.Super. at 412–13, 162 A.2d at 10–11.

course, if a compensation claim is pending disposition, joinder should be allowed contingent upon the final determination of such claim.

Remaining to be considered is the question of when the injury arose upon which the compensation claim is founded.

■ The date of the accrual of a claim for compensation due to injuries based upon the inhalation of asbestos is a recurrent problem in asbestos litigation. Two theories exist to fix that date. One theory views each exposure to asbestos fibers as an injury, the other regards the *manifestation* of a disability as the injury. *See INA v. Forty-Eight Insulations, et al.*, 633 F.2d 1212 (6th Cir. 1980), *reh. granted in part*, No. 78–1322/3/4/5/6 (6th Cir. March 5, 1981). Our review of Pennsylvania's Workmen's Compensation Act and the pertinent case law leads us to conclude that Pennsylvania applies the manifestation-of-disability standard.

■ Pennsylvania's compensation system provides for the compensation of workmen for "injuries" that occur in the Commonwealth. 77 P.S. § 1 et seq. The Act defines "injuries", among other things, as an "occupational disease as defined in Section 108 of this act. . . ."[9] 77 P.S. § 411(2). This section of the Compensation Act proceeds to state that "whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease . . ." 77 P.S. § 411(2). Although the Act does not specifically define "disability", the Pennsylvania Commonwealth Court has concluded that disability under Workmen's Compensation is a combination of a medically proved impairment and a causal relationship therefrom to the reduction in the claimant's earning capacity. *Harbison-Walker v. Workmen's Compensation Appeals Board*, 40 Pa. Cmwlth. 556, 397 A.2d 1284 (1979); *Consolidation Coal Co. v. Workmen's Compensation Appeals Board*, 37 Pa.Cmwlth. 412, 391 A.2d 14 (1978). Thus, for an occupational disease

to constitute a disability under the act and the basis for compensation, it must impair the claimant's earning capacity. It is clear, therefore, under the Compensation Act that an injury can occur from an occupational disease, that a disability from an injury will support an award of compensation, and that disability requires a reduction in earning capacity. Since there can be no right to compensation until the injury reduces the claimant's earning capacity, the Compensation Act, although obliquely, does define a claim for compensation as the manifestation of a disability due to an injury in the course of employment.

■ This construction of the Compensation Act is consistent with Pennsylvania case law. The Pennsylvania Commonwealth Court has stated ". . . there can be no disability as a result of an occupational disease until such disability 'manifests itself', and in turn there can be no manifestation of disability where a claimant would be able to continue at his former position." *Montgomery v. Workmen's Compensation Appeals Board*, 42 Pa.Cmwlth. 143, 145–6, 400 A.2d 253, 254 (1979). Thus, when the cumulative impact of the inhalation of asbestos debilitates a claimant to the extent that he can no longer continue at his former job, the injury and cause of action for a workmen's compensation claim arises.

Accordingly, we find that an injury arises when a disability manifests itself and not upon each inhalation of asbestos, as advocated by some of the parties to this action.

The remainder of the Defendants' points can be disposed of quickly. The analogy that Defendants draw from the common-law rule which permits joinder for contribution of tortfeasors who are immunized from direct action by the injured party, including reliance on *Puller v. Puller, supra*, was made by the appellants in *Brown v. Dickey, supra*, and rejected by the court. *Brown, supra*, 397 Pa. at 461, 155 A.2d at 840.

The argument that an employer, otherwise covered by the Compensation Act, who escapes liability under that act because the

---

**9.** Section 108 lists asbestosis as a compensable occupational disease. 77 P.S. § 27.1(*l*) (1972).

**324**

injured employee filed no claim for compensation or filed an untimely claim, or because this employer was not the employer arbitrarily selected for liability under 77 P.S. § 411(2) or § 1401(g) is not persuasive.

First, this argument is based on the principle set forth in *Greer v. United States Steel Corporation*, 475 Pa. 448, 380 A.2d 1221 (1977), and *Boniecke v. McGraw-Edison Co.*, 485 Pa. 163, 401 A.2d 345 (1979). However, those cases stand for the specific proposition that where a particular *occupational disease* is not one for which recovery *may be had* under the Compensation or O.D. Acts a common-law action may be brought by the injured employee against the employer to recover damages. In other words, where the Compensation or O.D. Acts does not apply at all then a common-law tort action may be brought. But, asbestosis, and cancer resulting from the inhaling of asbestos dust, for which plaintiffs in the cases *sub judice* seek recovery, are specifically enumerated as occupational diseases. 77 P.S. § 27.1(*1*); *See also* 77 P.S. § 1208(*1*); 77 P.S. § 27.1(n); 77 P.S. § 1208(n).

■ Second, as we indicated earlier in this opinion, it is the employer-employee relationship as such which mandates inclusion in the Compensation and Occupational Disease Acts. 77 P.S. § 431, § 1405. The employer's protection under the Acts is not contingent upon his liability under a claim for compensation benefits made by an employee. *See* 77 P.S. § 481. We therefore agree with the opinion of Judge Teitelbaum in *Schultz v. Bell & Howell*, 512 F.Supp. 558 (W.D.Pa.1981)[10] and cannot accept the argument that an employer actually must make payments under one of the acts before he is entitled to its protection.

Finally, it is argued that joinder should be required either under Fed.Rules Civ. Proc. Rule 17, 28 U.S.C. (1980), since the employer is a real party in interest, or under Fed.Rules Civ.Proc. Rule 19, 28 U.S.C. (1980) on the ground that he is a necessary

or indispensable party. We rejected this argument when it was previously made in a similar case, *Shaner v. Caterpillar Tractor Co.*, 483 F.Supp. 705 (W.D.Pa.1980), and we adhere to that ruling.

An appropriate order will be entered.

---

**10.** In that case the court ruled that an employer who successfully defended a claim for compensation could nonetheless raise the immunity of § 303(b) when joinder was attempted by a third party.